2004 OK CIV APP 54

In re REFERENDUM PETITION NO. 0203–1, CITY OF NORMAN, Oklahoma.

Fred R. Gipson, Appellant,

v.

Sassan Moghadam, Appellee.

No. 99,664.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 25, 2004.

Fred R. Gipson, Norman, OK, Pro Se.

H.L. Heiple Heiple Law Offices, Inc., Norman, OK, for Appellee.

OPINION BY JERRY L. GOODMAN, Judge.

¶ 1 Fred R. Gipson appeals the trial court's August 12, 2003, judgment dismissing his referendum petition because it did not contain sufficient valid signatures. Based on the facts and applicable law, we affirm.

## FACTS

¶ 2 The Norman City Council approved a zoning amendment granting a special use permit for a mini-storage facility to be located in the city limits. Gipson, a Norman resident, opposed the decision. He filed a referendum petition to place the issue on the ballot.

¶ 3 To do so, a proponent is required by 11 O.S.2001 § 15–103(B) to obtain the number of signatures of registered voters residing in the municipality equal to at least 25 percent of the votes cast at the preceding general election. Based on the preceding election's turnout, Gipson needed at least 1,940 valid signatures to put the matter on the ballot.

¶ 4 Gipson timely submitted petitions to the City Clerk, who certified 3,289 signatures. The mini-storage facility's developer, Sassan Moghadam, filed a protest. Among other arguments, he asserted Gipson failed to collect the required number of signatures.

¶ 5 At a hearing, the Cleveland County Election Board Secretary, who is in charge of conducting Norman municipal elections, testified that her office reviewed the signatures and determined 2,026 of those were registered voters residing in the County. She acknowledged that the Board's records did not show how many of those signatures were those of registered voters residing in the municipality, which is what the statute requires. In that regard, she acknowledged that a substantial number of registered voters live inside the County but outside the city limits of Norman. She further testified she believed the information in the Election Board's system was up to date.

¶ 6 The trial court also heard testimony from Moghadam's office manager, who stated she had examined the individual petition signers' addresses by looking them up in the County Election Board's database, and found that some of the signatories lived in Moore or other places inside the County but outside Norman. According to a chart she prepared, which the trial court admitted into evidence, there were over 400 such examples. She admitted on cross-examination that she did not know how recent those addresses were and acknowledged the information could be outdated. She also testified the County's figures should be reduced by 11 to account for duplicate and in one case triplicate signatures.

¶ 7 Following a hearing, the trial court dismissed the petition for the reason that it did not contain sufficient valid signatures. Gipson appeals.

## ANALYSIS

¶ 8 Gipson makes a single argument on appeal: that the trial court erred because Moghadam failed to produce clear and convincing evidence that the number of valid signatures was not sufficient. Gipson asserts that because the County Election Board Secretary testified that 2,026 registered voters signed the petitions, and because that figure is more than the 1,940 signatures required, the trial court's decision must be reversed.

¶ 9 This is an incomplete representation of the evidence. What Gipson leaves out of his analysis is that the Board Secretary clearly qualified her testimony by stating that the 2,026 figure represented registered voters residing in the *county,* while the statute requires a certain number of registered voters residing in the *municipality.* Her testimony alone certainly does not show the trial court erred.

¶ 10 Beyond that, the record contains the results of Moghadam's employee's analysis. Using information from the County's database, she identified over 400 signatures of registered county voters whose addresses were outside the city of Norman. By subtracting these names from the total of 2,026 county registered voters (even without counting the few duplicate or triplicate signatures), the number of signatures was less than the required 1,940.

¶ 11 In *In re Initiative Petition No. 365, State Question No. 687,* 2001 OK 98, 55 P.3d 1048, the Oklahoma Supreme Court analyzed a challenge to the numerical sufficiency of signatures on an initiative petition. As in this case, the challenge involved a comparison of the signatures on the petitions with an official electronic database: in that case, the State Election Board's Oklahoma Election Management System; in the instant case, the

Cleveland County Election Board records. Though the matter there was an original action, the Court's analysis is instructive.

¶ 12 When an opponent attacks signatures appearing on a petition on the basis its signers are not registered voters, a presumption arises that the persons are registered voters. *Id.* at ¶ 5, 55 P.3d 1048, 1050. The opponent—here, Moghadam—bears the burden of producing sufficient competent evidence to overcome this presumption. *Id.* If an opponent establishes a prima facie case of non-registration by proving that a petition signer is not found in the appropriate database, then it is up to the petition's proponent—here, Gipson—to overcome this prima facie case. *Id.* at ¶ 22, 55 P.3d at 1053. This process of comparing the signatures with the records is a difficult one, given an opponent's strong incentives to require an exacting match. *Id.* at ¶ 21, 55 P.3d at 1053. Throughout this process of analysis it is the opponent's ultimate burden of proving non-registration *clearly and convincingly. Id.* at ¶ 23, 55 P.3d at 1053.

¶ 13 In the instant case, Moghadam presented clear and convincing evidence that the petitions failed to contain the requisite number of signatures. That evidence showed that out of over 3,000 signatures, a total of 2,026 signatures were those of registered County voters. Out of that total, over 400 were those of voters residing outside the Norman city limits. Because 1,940 signatures of registered voters residing in the municipality were required, Moghadam's evidence established a prima facie case that the petitions did not contain sufficient valid signatures to call for a referendum.

¶ 14 In *Petition No. 365,* the Supreme Court stated that a prima facie case can be overcome either specifically, by offering proof that a specific challenged voter is in fact registered; or more generally, by establishing that opponents were generally capricious, unreasonable, or inaccurate in comparing the names or addresses of the petition signers against the official database. *Id.* at ¶ 22, 55 P.3d at 1053. Gipson's only attempt to do so was by a general challenge. He suggested the possibility that those registered voters who gave non-Norman addresses to the Election Board may have moved inside the city limits at the time they signed the petitions.

¶ 15 The problem with this argument is that it is speculative, especially given the Election Board Secretary's testimony that her records were up to date. Moreover, if it could be said that some Norman residents were incorrectly indicated by the records to be non-residents, then it could just as easily be said that some non-residents were wrongly shown to be residents. We hold Moghadam established a prima facie case, which Gipson failed to overcome.

¶ 16 The trial court's dismissal of Gipson's petition for the reason that the petition did not contain sufficient valid signatures is supported by clear and convincing evidence. It is therefore unnecessary to consider Moghadam's other arguments in support of the trial court's decision.

¶ 17 AFFIRMED.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.